**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MARCIE FOX,

                  Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

1:19-cv-04879-NLH

**OPINION**

---

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S. WHITE HORSE PIKE
AUDUBON, NJ 08106

      *On behalf of Plaintiff*

EMILY BRESLIN MARKOS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

      *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section
205(g) of the Social Security Act, as amended, 42 U.S.C. §
405(g), regarding Plaintiff's application for Disability
Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of April 15, 2015.  For the reasons stated below, this Court will affirm that decision.

I.    BACKGROUND AND PROCEDURAL HISTORY

On November 10, 2015, Plaintiff, Marcie Fox, protectively filed[4] an application for DIB and SSI alleging that she became

---

quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the

2

disabled as of April 15, 2015.[5]  Plaintiff claims that she can no longer work at her previous job as a receptionist because she suffers from diabetes, osteoarthritis, depression, anxiety, and fibromyalgia, as well as several other impairments.

After Plaintiff's claim was denied initially upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on July 23, 2018.  On September 6, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on January 11, 2019, making the ALJ's September 6, 2018 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial

---

formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that her onset date of disability is April 15, 2015, the relevant period for Plaintiff's SSI claim begins with her November 10, 2015 application date, through the date of the ALJ's decision on September 6, 2018.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

4

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,
a district court is not "empowered to weigh the evidence or
substitute its conclusions for those of the fact-finder."
Williams, 970 F.2d at 1182.  However, apart from the substantial
evidence inquiry, a reviewing court is entitled to satisfy
itself that the Commissioner arrived at his decision by
application of the proper legal standards.  Sykes, 228 F.3d at
262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);
Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

   **B.   Standard for DIB and SSI**

   The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[6] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is

---

[6] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of diabetes mellitus, osteoarthritis, obesity, and obstructive sleep apnea were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain

restrictions, which included Plaintiff's past relevant work as a receptionist (step four), and was therefore not disabled.[7]

Plaintiff presents three issues on appeal: (1) Whether the ALJ erred at step two by failing to consider Plaintiff's mental impairments and fibromyalgia as severe; (2) Whether the ALJ and Appeals Council erred by failing to consider evidence submitted after the ALJ issued his unfavorable decision; and (3) Whether the ALJ erred at step four by finding that Plaintiff was capable of performing her past relevant work.

**1.   Whether the ALJ erred at step two**

Plaintiff argues that the ALJ erred by not considering her fibromyalgia and mental impairments to be severe.  At step two, the ALJ has to "consider the medical severity of a claimant's impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii).  "The severity test at step two is a '*de minimis* screening device to dispose of groundless claims.'"  McCrea v. Comm'r of Soc. Sec.*,* 370 F.3d 357, 360–61 (3d Cir. 2004) (citation omitted).  The severe impairment "must have lasted or must be expected to last for a continuous period of at least twelve months."  20 C.F.R. §

---

[7] Because the ALJ concluded that Plaintiff was capable of performing her past relevant work, the ALJ did not need to continue to step five of the sequential step analysis.  Benjamin v. Commissioner of Social Security, 2019 WL 351897, at *4 n.9 (D.N.J. 2019) (citing Valenti v. Commissioner of Social Sec., 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f)).

404.1509.  In order to have a severe impairment, the impairment or combination thereof must significantly limit a person's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

In this case, the ALJ found that Plaintiff's claimed fibromyalgia was not a medically determinable impairment.  With regard to Plaintiff's claimed mental impairments, the ALJ found that they only caused a mild limitation in Plaintiff's functional areas and were therefore not severe.  The Court finds that substantial evidence supports both of these findings.

### a.   Fibromyalgia

SSR 12-2p explains: (1) "FM is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months"; (2) "We cannot rely upon the physician's diagnosis alone"; and (3) "Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM.  Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs."  SSR 12-2p provides an extensive checklist of criteria from the American College of Rheumatology (ACR) to determine whether a claimant suffers from fibromyalgia separate from, or

10

in addition to, other impairments.[8]

The ALJ's decision sets forth the criteria for diagnosing fibromyalgia, and recounts the medical records Plaintiff proffered to support her claim.  The ALJ noted that on October 7, 2016, Plaintiff was treated at a hospital for diffuse tenderness, but that the medical record did not detail any of the criteria in SSR 12-2p.

The ALJ also noted that Plaintiff's treating rheumatologist, Mohit Shukla, M.D., drafted a letter on June 13, 2017 that states he has been treating Plaintiff for the past year for fibromyalgia, and that Plaintiff also suffers from arthritis of the lower back with sciatica for which she was undergoing physical therapy and pain management.  (R. at 511.) The ALJ further noted that none of Plaintiff's medical records from Dr. Shukla were submitted as evidence the record.[9]  The ALJ found Plaintiff's fibromyalgia not to be a medically determinable impairment due to the dearth of medical evidence to support Plaintiff's claim.

The Court finds that the ALJ did not err in his

---

[8] https://www.ssa.gov/OP_Home/rulings/di/01/SSR2012-02-di-01.html.

[9] Plaintiff argues that the ALJ failed in his duty to obtain those missing records, and that the Appeals Council erred in not considering them once the missing records were presented on appeal.  The Court will address these arguments below.

determination that Plaintiff's fibromyalgia is not a medically determinable impairment, let alone a severe impairment, for two reasons: (1) Conclusory statements by a medical provider that a patient suffers from fibromyalgia are insufficient to meet a claimant's burden at step two for establishing a medically determinable impairment, and (2) other impairments, such as Plaintiff's severe impairment of osteoarthritis and sciatica, may also have caused Plaintiff's symptoms.  See, e.g., Friedman v. Berryhill, 2019 WL 1418132, at *10 (D.N.J. 2019) ("The ALJ's conclusions with respect to the non-severity of Plaintiff's fibromyalgia are supported by substantial evidence, because the medical record demonstrates that Plaintiff's diagnosis also included rheumatoid arthritis, which can cause similar symptoms to fibromyalgia.  Indeed, Plaintiff does not dispute that the record is devoid of any objective medical evidence to support that her symptoms are only caused by fibromyalgia.  In the absence of such medical information, the ALJ did not error by classifying Plaintiff's fibromyalgia as a non-severe impairment.").

> b.  **Mental impairments**

Plaintiff argues that the ALJ erred in his determination that Plaintiff's claimed depressive disorder and panic disorder, while medically determinable impairments, were not severe because they only caused her mild limitations in the four areas

of functioning that an ALJ is required to consider in assessing a claimant's mental impairment: Plaintiff's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

The ALJ detailed Plaintiff's treatment records, and noted:

(1) Plaintiff self-reported that she managed her financial matters, and although she needed reminders to take her medication, take care of personal needs and to go places, she had no problem with memory, understanding or following instructions.  Plaintiff's medical records showed her memory ranged from intact to fair, her insight was fair, and her judgment ranged from normal to fair, with the findings of "fair" only occurring in one consultative examiner's note, with the remainder of Plaintiff's treating sources revealing normal findings, and effective treatment with medication.

(2) Plaintiff self-reported that she shopped in stores, spent time with others, but stated she had trouble getting along with others because she had been fired from a job for that issue.  Plaintiff also testified as to troubles with her son. Currently, however, Plaintiff was successfully able to live with her mother, have some friends, and was able to get along with her mental health professionals.

13

(3) Plaintiff alleged problems with concentration and paying attention, but the records showed her concentration ranged from intact to impaired, and she could remain focused during her examination.  There was no evidence of pace or persistence issues.

(4) Plaintiff alleged problems with stress and changes in routine, but there was no evidence that she ever appeared disheveled, unkempt or malodorous, she could control her emotional state in public, and manage her safety needs.

Based on his review of the medical records and Plaintiff's testimony, the ALJ determined that Plaintiff only suffered from mild limitations in all four areas.

The Court finds Plaintiff's challenge to the ALJ's determination that Plaintiff suffered from mild mental impairments amounts to mere disagreement with the ALJ's decision.  Plaintiff recounts her testimony before the ALJ to rebut the ALJ's findings, and contends that the "record is unanimous as to the Plaintiff's crippling anxiety," but Plaintiff fails to point to evidence that specifically contradicts that record evidence cited by the ALJ.  Plaintiff's arguments and overall disagreement with the ALJ's conclusions do not demonstrate that the ALJ's assessment of Plaintiff's mental impairments is not supported by substantial evidence.  See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514–15 (3d Cir.

14

2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision.").

2.  **Whether the ALJ and Appeals Council erred by failing to consider evidence submitted after the ALJ issued his unfavorable decision**

As noted above, medical records of Plaintiff's treatment with Dr. Shukla were not submitted to the ALJ for consideration prior to the ALJ's decision.  When Plaintiff filed her request for review before the Appeals Council, she submitted the missing records.  The Appeals Council determined that the records did "not show a reasonable probability that it would change the outcome of the decision." (R. at 2.)

Plaintiff argues that the ALJ had a duty to develop the record, which required the ALJ to retrieve the missing medical records.  Plaintiff argues that these records would have changed the outcome of the ALJ's decision, and therefore remand is necessary.

15

Plaintiff's arguments are unpersuasive for several reasons. It is true that an ALJ has "a duty to develop a full and fair record in social security cases," and "an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (citations omitted). The reason for this duty is that "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." Id. (citation omitted).

An ALJ, however, is not required to hunt in vain for medical records that a claimant's attorney represents do not exist. See Keveanos v. Berryhill, 2019 WL 1500624, at *8 (D.N.J. 2019) ("When invited by the ALJ to proffer more medical documentation, Keveanos declined to do so. . . . [T]he ALJ did not act unreasonably in relying on the statement of Keveanos's counsel that no documentation was missing from the record." (citing Batts v. Barnhart, 2002 WL 32345745, at *8 (E.D. Pa. Mar. 29, 2002) (citing Glenn v. Sec. of Health and Human Serv., 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel, the ALJ 'is entitled to assume that he is making his strongest case for

16

benefits.'")); <u>Leitch v. Commissioner of Social Sec. Admin.</u>, 2009 WL 243167, at *14 (D.N.J. 2009) ("[T]he responsibility for developing the record is not solely that of the ALJ.  The regulations also indicate that when asked a claimant 'must' provide the relevant evidence.  Moreover, when Plaintiff is represented by counsel a duty is imposed on that representative to comply with requests for evidence with 'reasonable promptness.'" (citing 20 C.F.R. §§ 404.1740(b), 416.1540(b)).

Here, at the beginning of the hearing before the ALJ, the ALJ asked if Plaintiff's counsel had an opportunity to review the record, and if so, whether he had any objections to the record.  Counsel responded that he reviewed the record and he did not have any objections.  The ALJ then asked counsel if he had any additional exhibits to submit, and counsel responded that he did not.  The ALJ asked counsel if he would like the ALJ to hold the record open for additional evidence, and counsel responded that he did not think there were any more records to obtain.  The ALJ stated that he would close the record after the hearing, but that if counsel obtained any additional records, counsel was to submit them as soon as he could so that he should consider the additional evidence prior to issuing his decision. (R. at 47-48.)  The hearing was held on July 23, 2018, and the ALJ issued his decision on September 6, 2018.  No additional records were submitted to the ALJ during that time.

In his decision, the ALJ observed that while Dr. Shukla's June 13, 2017 letter referenced treatment for the past year, the underlying treatment notes were absent from the record. (R. at 23.) It appears that upon receiving the ALJ's decision, counsel realized that Dr. Shukla's treatment records were not part of the record before the ALJ, and counsel submitted them to the Appeals Council for consideration. (R. at 1-2.) The Appeals Council denied Plaintiff's request for review, and with regard to the missing medical records, the Appeals Council determined that the records did "not show a reasonable probability that it would change the outcome of the decision." (R. at 2.)

Plaintiff now asks this Court to consider Dr. Shukla's medical records. When a claimant seeks to rely on evidence that was not presented to the ALJ, a district court may remand the case only if the claimant can demonstrate that such evidence is new and material, and that good cause exists for not presenting the evidence to the ALJ in a timely manner. Hendry v. Commissioner of Social Security, 2018 WL 4616111, at *16 (D.N.J. 2018) (citing Matthews v. Apfel, 239 F.3d 589, 592-92 (3d Cir. 2001)) ("We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for

18

remand.  Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ.  Such a holding is instrumental to the speedy and orderly disposition of Social Security claims."); 42 U.S.C. § 405(g) (2001) ("[The District Court] may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").

The burden of showing that evidence is new, material, and there was good cause for failing to provide it to the ALJ is on the claimant.  <u>Matthews</u>, 239 F.3d at 595.  Plaintiff here cannot meet that burden.  Although Dr. Shukla's treatment records may be considered "new" because they were not before the ALJ for consideration, <u>see</u> <u>Szubak v. Secretary of Health and Human Services</u>, 745 F.2d 831, 833 (3d Cir. 1984) ("the evidence must first be 'new' and not merely cumulative of what is already in the record"), Plaintiff has not established good cause for why those records were not submitted to the ALJ.  Plaintiff has failed to provide any explanation for why treatment records from one of Plaintiff's treating sources during the relevant claimed period of disability were not submitted in support of her

19

claimed impairments.  Cf. Fricker v. Halter, 45 F. App'x 85, 87 (3d Cir. 2002) (finding that the district court erred when it considered additional evidence because the plaintiff did not show, among other things, that there was good cause for failing to present it to the ALJ).

Additionally, any procedural default aside, Plaintiff has not shown how those records are material - i.e., "the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Szubak, 745 F.2d at 833. The missing treatment records of Dr. Shukla consist of three visits.  Plaintiff's initial visit was on October 11, 2016 where she complained of joint pain.  Plaintiff's diagnosis was polyarthralgia and diabetic neuropathy.  (R. at 109-110.)

Plaintiff returned to Dr. Shukla on December 13, 2016, where she complained of knee, ankle, hip and low back pain.  She was undergoing physical therapy for her back and knees and stated that it was helping a lot.  Plaintiff also reported that neuropathy in her ankles was much better with medication.  (R. at 123.)  Plaintiff's diagnosis was the same.  (R. at 133.)

The final treatment record with Dr. Shukla is for February 20, 2017.  Plaintiff reported back pain with sciatica and knee pain, but physical therapy had been helping, as were several medications.  Plaintiff's assessment was polyarthralgia,

20

neuropathy, chronic low back pain and sciatica, osteoporosis
screening, and vitamin D deficiency.  (R. at 149.)

These records, even if considered by the ALJ, would not
have altered his analysis of Plaintiff's fibromyalgia.  Even
though Dr. Shukla stated in a letter dated June 13, 2017 that he
was treating Plaintiff for fibromyalgia, none of his treatment
notes reflect this diagnosis.  Moreover, these treatment records
further support the ALJ's assessment of her other impairments
and how they impacted Plaintiff's overall RFC.  Consequently,
remand so that the ALJ may consider this "new" evidence is
unwarranted.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d
Cir. 2005) (explaining that remand is not required where the new
evidence would not affect the outcome of the case).

**3.  Whether the ALJ erred at step four by finding that
    Plaintiff was capable of performing her past relevant
    work**

The ALJ determined that Plaintiff's RFC enabled her to
perform her past work as a receptionist, which was a semi-
skilled position at the sedentary level.  Plaintiff argues that
the Vocational Expert testified that being a receptionist is a
high stress job dealing with people, and she is incapable of
performing those job functions.  Plaintiff further argues that
if the ALJ found she was not able to perform her past job as a
receptionist, at step five she would have been automatically
found disabled because she is of advanced age limited to the

21

sedentary level of work.[10]

The Court has already determined that the ALJ did not err in his assessment that Plaintiff has only mild limitations in social functioning and handling stress.  Therefore, other than Plaintiff's disagreement with the ALJ's finding, Plaintiff has not presented a meritorious reason to support her argument that the ALJ erred at step four.

### III. Conclusion

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  The Court finds that the ALJ's determination that Plaintiff was not totally disabled as of April 15, 2015 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: April 16, 2020                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.


---

[10] At 50 years of age, a claimant is considered a person of advanced age, and the Medical-Vocational Guidelines ("Grids") direct a finding of disabled for an individual limited to sedentary work.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201.00(g) & 201.4.